Ramas 808 LLC v Abosefain, LLC (2025 NY Slip Op 51467(U))

[*1]

Ramas 808 LLC v Abosefain, LLC

2025 NY Slip Op 51467(U)

Decided on September 16, 2025

District Court Of Nassau County

Hohauser, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 16, 2025
District Court of Nassau County

Ramas 808 LLC, Petitioner,
against
Abosefain, LLC, et al., Respondents.

Docket No. LT-003056-24/NA

Matthew Tannenbaum, Esq., Attorney for Petitioner, 825 East Gate Blvd., Suite 308, Garden City, NY 11530; Mitchell S. Zingman, Esq., Braverman Greenspun, Attorneys for Respondent, 110 East 42nd Street, 17th Floor, New York, NY 10017

William Hohauser, J.

Papers Considered:
Notice of Motion for Summary Judgment (with exhibits) 1
Affirmation in Opposition (with exhibits) 2
Reply Affirmation 3
 DECISION ON MOTION

 Factual Background
As alleged in the Verified Petition, on or about April 15, 2015, Petitioner Ramas 808 LLC's ("Ramas") predecessor-in-interest, Angelina Zabel Properties, Inc. ("Zabel") leased the premises located at 279 Hillside Avenue, Williston Park, NY 11596 (the "premises") to Respondent Abosefain, LLC ("Abosefain") for a seven (7) year period, to terminate on March 31, 2022. Pursuant to the rider to the lease, Abosefain was afforded two (2) separate, seven (7) year [*2]renewal options, should it choose to do so, and in accord with other provisions of the lease and rider. On December 5, 2023, Petitioner Ramas purchased the premises from Zabel, and was assigned the lease at issue. Shortly thereafter, on December 19, 2023, Ramas notified Abosefain of the sale / assignment, and within days (December 23, 2023) Ramas informed Abosefain of its intent to terminate the lease pursuant to Paragraph 15 of the underlying lease, effective as of April 20, 2024. When Abosefain failed to vacate the premises, Ramas served a Notice to Vacate and subsequently filed the instant petition to recover possession of the subject premises.
In a timely fashion, Abosefain interposed its answer, contending, among other defenses, that: (i) the lease remained in effect, as the predicate notices were insufficient and / or improperly served; (ii) pursuant to the lease, Ramas lacked standing to terminate the same; and (iii) that the Notice to Vacate vitiated the purported termination of the lease. Thereafter, Abosefain filed the instant motion for summary judgement and /or dismissal.
In its motion, Abosefain references Paragraph 15 of the lease, which provides that "in the event of the sale by the Landlord of the demised premises, or the property of which said premises are a part, the Landlord or the puchaser may terminate this lease on the thirtieth day of April in any year upon giving the Tenant notice of such termination prior to the first day of January in the same year." Abosefain asserts that this provision required service of a termination notice prior to the sale from Zabel to Ramas, i.e., while the sale was pending. Per Abosefain, since notice was provided after Ramas succeeded to ownership, Ramas could only terminate the lease when it (Ramas) decided to sell the premises (see Supporting Affirmation of Mitchell Zingman, at �� 5-7). According to Abosefain, since Ramas apparently has not yet determined to sell the premises, it had no right to terminate the lease and this matter should be terminated.
Ramas rejects these arguments, countering that the plain language of the termination clause allows for termination "by the Landlord or the purchaser," and that Ramas complied with the time constraints imposed by the lease. As a result, Ramas asserts that the termination notice was appropriate, the motion should be denied and the case scheduled for trial.

Abosefain's Motion for Summary Judgment/Dismissal
It is well settled that the "drastic remedy" of summary judgment is appropriate only where there is no doubt as to the absence of a triable issue of fact (see Rotuba Extruders v. Ceppos , 46 NY2d 223, 231 (1978), or where the issue is arguable. In re Estate of Beckford, 280 AD2d 472 (2nd Dept 2001). The focus for the court is on issue finding, not issue determining (see Hantz v. Fishman, 155 AD2d 415 (2d Dept 1989). It is the movant's burden to establish prima facie entitlement to judgment as a matter of law, tendering evidence in admissible form sufficient to eliminate any material issues of fact Winegrad v. New York Univ Med Cen., 64 NY2d 851 (1985). Once the movant has made such a showing, the burden then shifts to the opposing party to produce evidentiary proof in admissible form demonstrating the existence of triable issues of fact necessitating a trial. Zuckerman v. City of New York , 49 NY2d 557 (1980). The opposing papers must "raise genuine factual issues," and not mere supposition. See generally J.P. Morgan [*3]Chase Bank, N.A. v. Gait Group, Inc., 84 AD3d 1028 (2nd Dept 2011).
Similarly, in addressing a motion to dismiss under CPLR 3211(a)(1) and/or (a)(7), the Court will consider the facts in a light most favorable to the non-moving party. A motion to dismiss will be granted only if the moving party has made a sufficient showing, which the responding party has failed to rebut. A motion to dismiss pursuant to subsection (a)(1) requires documentary evidence that are "unambiguous, authentic and undeniable," Attias v. Costiera, 120 AD3d 1281 (2nd Dept 2014), must utterly refute the allegations of the underlying complaint (or petition), Kolchins v. Evolution Mkts, Inc., 31 NY3d 100 (2018), and must conclusive refute the plaintiff's allegations. J.P. Morgan Sec. v. Vigilant Ins. Co., 21 NY3d 324 (2013). A similar standard applies to motions submitted under the rubric of subsection (a)(7).
In general, "a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed. Morlee Sales Corp. v. Manufacturers Trust Co., 9 NY2d 16 (1961); Weg v. Kaufman, 159 AD3d 774 (2nd Dept 2018); Three J.V. Assoc., LLC v. Tashkhissi, 2010 NY Misc. LEXIS 4768 (Sup. Ct. Nassau Co. 2010). If the terms of the underlying written contract are found clear and unambiguous, that contract must be enforced pursuant to the plain meaning of its terms. Greenfield v. Phillies Records, 98 NY2d 562 (2002). Accordingly, if the language of the contract is bereft of ambiguity, its meaning may be determined "as a matter of law on the basis of the writing alone, without resort to extrinsic evidence," and the court must determine the parties' intentions as expressed in the language utilized in the underlying agreement. Three J.v. Assocs., LLC, supra. See also Vermont Teddy Bear Co. v. 538 Madison Realty, 1 NY3d 470 (2004). Accordingly, the plain terms of a written agreement will govern, unless statutory language or public policy dictates otherwise. Abiele Constr. v. NYC School Constr. Auth., 91 NY2d 1 (1997).
In applying these general principles to matters involving lease cancellations, it has been held that "a conditional limitation giving a landlord a termination notice runs with the land, and inures to the benefit of successors in title of the original landlord, even without specifically providing that the privilege shall inure to the benefit of the landlord's heirs, successors, or assigns." See Rasch's Landlord & Tenant §23.34 (Fifth Ed. 2017). Further, whether a lease provision runs with the land, or is personal to the original parties to the lease, is determined by the intent of the parties, as set forth in their written agreement. Morlee Sales Corp. v. Manfacturers Hanover Trust Co., supra. 
Although a number of courts have strictly construed cancellation privileges contained in lease agreements, the majority have involved situations factually distinct from that presented herein. As one court held, "[t]o operate as..... permitting ultimate divestiture of this interest, there must be strict compliance with the terms of the option. Anything else is ineffective. The right to terminate the contract must within the time expressly limited for so doing. ....The parties must be held to the terms of their covenant. A. Dubois & Son, Inc. v. Goldsmith Bros., 273 A.D. 306 (1st Dept 1948)(internal citations omitted). Thus, in Krim Realty Corp. v. Varveri, 97 Misc. 407 (App. Term 1st Dept 1916), the court parsed the language of the underlying lease, and held [*4]that since the lease identified only the landlord as possessing of the right to cancel, that option could not be exercised by a successor owner. The court also noted that the tenant continued to pay, and the successor continued to accept, rent payments made after the transfer. Similarly, in Rosemberg v. Brens, 19 Misc 3d 1142(A) (Civ.Ct. Kings Co. 2008), in which the subsequent owner sought to terminate the lease, the court again adhered to the plain text of the contract, which provided that only the landlord could exercise the privilege,[FN1]
and noted that its ruling pertained only to the facts and circumstances of the particular case.[FN2]

However, in Morlee Sales, supra, the Court of Appeals determined that the purchaser of a premises subject to a tenant's lease was permitted to give notice and terminate the subject lease. In reaching its decision, the Court of Appeals opined that because the pertinent lease provision did not confine the right to cancel to the selling owner / landlord, it would be illogical to write such a restriction into an otherwise clear agreement. As stated, "[the court] should not imply a restriction which the parties chose not to insert in the contract." (citations omitted). The Court of Appeals distinguished those cases in which the right to cancel inhered only to a specific party, or those in which the successor / owner waived the right to cancel by its delay. Further, the Court of Appeals held that the successor owner's acceptance of rent after cancellation yet before the cancellation date (and even during the pendency of the eviction proceedings) was not "inconsistent with the right to cancel." Morlee supra, 9 NY2d at 20.

Application of Law to the Facts Presented

As applied to the instant matter, the lease between Zabel and Abosefain does not, in the Court's considered opinion, fall prey to the deficiencies similar to those noted above and contained in Abosefain's supporting affirmation. The lease specifically provides for cancellation of the lease either by the landlord or the purchaser, not only by the landlord. As such the lease clearly contemplates that the landlord might wish to liquidate its investment, and such a possibility (with concomitant ramifications) is specifically mentioned in the applicable lease provision. Said provision also provides for how and when notice is to be provided, which [*5]constraints were followed.[FN3]

As the lease is not "deficient" in the sense offered by Abosefain, the Court is not inclined to rewrite the same so as to import any ambiguities, but instead to enforce the cancellation clause according to its terms. Otherwise, as has been noted in other jurisdictions, the value of the cancellation clause to Zabel (and to Ramas, as well) would be greatly diminished. See Myobt, LLC v. I.N.E.Corp, 2005 Ariz. Super. LEXIS 823 (Superior Ct. Pima Co. 2005), in which the court noted that if "the [landlord] would have to cancel before the sale occurs....[the lessor would] run the risk of losing a possibly valuable lease if the same is not consummated....or face a damage suit for wrongful eviction," and cited approvingly to Morlee Sales, supra, for further support. The Myobt court continued to invoke Morlee's rationale for distinguishing cases which, in contrast to this matter, specifically constrain who may cancel a lease, or because the purchaser waived this right by virtue of significant delays. See also Butler & Herman Co. v. Meth, 1911 N.Y.S. 271 (App. Term 1st Dept 1910).
In these circumstances, the Court recognizes and adopts the reasoning enunciated of the Court of Appeals in Morlee Sales, supra, and its progeny as on point and binding. See, e.g. Jim Jack & Joe Realty Corp. v. Rothenburg, 78 AD2d 634 (2nd Dept 1980), and certainly sufficient to withstand a motion for summary judgment / dismissal.[FN4]
Accordingly, respondent Abosefain's motion for summary judgment and / or dismissal is denied, in its entirety. This matter shall be placed back on the active matter calendar for trial.
This constitutes the decision and order of the court.
WILLIAM HOHAUSER
J.D.C.
Dated: September 16, 2025
Hempstead, New York

Footnotes

Footnote 1:The Rosemberg court noted further the tenant's contention that the transaction between the named landlord and its successor was a sham,

Footnote 2:The other cases cited within Abosefain's main brief may be distinguished on their facts. Sitt v. Fifth Avenue Realty Co., 31 Misc 2d 803 (Sup.Ct. N.Y.Co. 1961) is distinct not only because the underlying agreement specified only the landlord, but also in that the purchaser accepted rent subsequent to its purchase. In Payne v. Braithwaite, 113 Misc. 517 (App.Term 1st Dept 1920) the right to cancel inhered only to the landlord, but also faulty notice to the respondent. The court in A. Dubois & Son, Inc. v. Goldsmith, supra, invalidated a cancellation notice where only ninety-five (95) days notice was given instead of the called-for 120 day's notice in the lease. In 112 East 36th Street Holding Corp. V. Daffos, 273 AD2d 447 (1st Dept 1948), aff'd 298 NY 763 (1948), the court noted that only the landlord could terminate the lease, but also that in light of the successor's two-year wait to cancel, any such right was extinguished. 

Footnote 3:The reply affirmation contains several new arguments; none of which bear on the court's decision. For example, the reply affirmation contends (see �5) that in his opposing statement, Mr. Harshit Chugh, the managing member of Ramas, "claims to have signed and sent out the Termination Notice." However, a close reading of the Harshit Chugh statement does not contain a contention of his signing the Termination Notice; rather said notice was signed by a "member" of Ramas, Sunjil Chugh. Harshit Chugh may well have served the Termination Notice. However, the reply affirmation correctly notes that one of the cases cited by Ramas in its opposition to the instant motion, Atlantic Walk, LLC v. Jordan Parking Corp, et al., 2007 Misc. LEXIS 9276 (Sup. Ct. N.Y.Co. 2007), has no factual relevance to this matter, although that case did involve the same lease cancellation clause.

Footnote 4:In fact, the Morlee Sales court expressly repudiates Abosefain's implied argument that Ramas would not be entitled to collect rent for the period between the service of the Notice of Termination and the cancellation date.